UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CARLOS CRUZ, *pro se*,

                     Petitioner,

        -against-

ROBERT RAYMOND, Superintendent,

                     Respondent.
------------------------------------------------------------------x

**MEMORANDUM AND ORDER**

10-CV-1491 (DLI)

**DORA L. IRIZARRY, United States District Judge:**

*Pro se* Petitioner Carlos Cruz seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (*See generally* Petition ("Pet."), Dkt. Entry No. 1.) Shortly after the Petition was filed, the Court stayed this action to permit Petitioner to pursue a writ of error *coram nobis*, which he fully litigated in New York state courts. Petitioner then moved to amend his petition to add a new claim (*see generally* Amended Petition ("Am. Pet."), Dkt. Entry No. 24), which this Court granted (*see* Aug. 28, 2012 ECF Order Lifting Stay and Granting Motion to Amend). The Court construes the Petition and Amended Petition as challenging Petitioner's conviction and sentence on the grounds that: (1) the trial court improperly admitted expert witness testimony on gang violence when there was no evidence of Petitioner's membership in a gang; (2) the trial court improperly imposed consecutive sentences in violation of the Fifth and Eighth Amendments; (3) the trial court improperly permitted eye-witnesses of the crime to testify against Petitioner, even though those witnesses lacked personal knowledge of Petitioner's involvement in the crime; (4) the charging instrument was defective; and (5) ineffective assistance of appellate counsel, in violation of the Sixth Amendment as established by *Strickland v. Washington*, 446 U.S. 668, 690-91 (1984). (*See generally* Pet.; Am. Pet.)

The Kings County District Attorney, as counsel for Respondent, opposes each claim alleged in the Petition (*see generally* Affirmation of Sholom J. Twersky in Opposition to Petition ("Twersky Affirm."), Dkt. Entry No. 6), and the Amended Petition (*see generally* Affidavit of Twerksy in Opposition to Amended Petition ("Twersky Aff."), Dkt. Entry No. 27). For the reasons set forth below, the Petition is denied in its entirety.

## BACKGROUND

The facts established at trial demonstrated that, on the night of December 22, 2003, Petitioner and an accomplice named Antonio Flores[1] ("Codefendant") attended a party at a club in Brooklyn, New York. (Trial Transcript, *People v. Antonio Flores & Carlos Cruz*, Indict. No. 8978/2003 ("Tr.") 519, 524, 529-38, 542-43, 549.) At approximately 2:00 AM the next morning, Petitioner and Codefendant fired into a crowd of people outside the club. One of their bullets struck Sergio Hernandes in his jaw. (*Id.* at 449-51.) Two struck Javier Garcia in the torso, passing completely through his body. (*Id.* at 454, 461-62.) Olivia Garcia was hit once in her torso and once in her head. (*Id.* at 474.) Hernandes and Javier Garcia survived their gunshot wounds; Olivia Garcia did not.

Nearby police officers who had heard the shots pursued Petitioner and Codefendant as they fled the scene of the shooting. (*Id*. at 156-64, 181.) Five to seven minutes later, after observing the two men run up a fire escape approximately one block from the club, police arrested both men on a rooftop as they attempted to break into a skylight. (*Id.* at 191-98, 216, 227, 269, 287-92.)

Detectives recovered six shell casings (one 9mm casing and five .380 caliber casings) from the scene of the shooting. (*Id*. at 237-38, 241-46, 257-60.) Detectives also recovered a

---

[1] Previously, this Court denied Codefendant's petition for a writ of habeas corpus. *See Flores v. Ercole*, 2010 WL 3951048 (E.D.N.Y. Oct. 7, 2010).

.380 caliber semi-automatic handgun and a 9mm semi-automatic handgun from the street down which Petitioner and Codefendant ran while fleeing from the scene. (*Id.* at 165-66, 175-77, 209-10, 609-14.) A doctor recovered two .380 caliber bullets from Olivia Garcia's body during an autopsy.[2] (*Id.* at 477, 500-01.) Ballistics experts concluded that these bullets and the spent casings all came from the two handguns found near the scene of the shooting. (*Id.* at 503-09.)

Petitioner and Codefendant were tried together, but before separate juries. At the trial, an eyewitness who had identified Codefendant as one of the shooters in a line-up again identified him at trial. (*Id.* at 102-03, 112-13, 378.) Another eyewitness, who had previously identified Petitioner as one of the shooters in a line-up, identified Petitioner at trial. One of the surviving victims testified that Petitioner was at the club prior to the shooting, and identified Petitioner as one of the shooters. (*Id.* at 532, 543.)

As evidence that gang tensions motivated the shooting, the prosecution offered testimony that Hernandes had asked the club DJ to offer a "shout-out" to the Sombras (a Mexican gang) over the microphone, and the DJ complied. (Tr. 520, 525.) Hernandes and Javier Garcia then asked the DJ to offer a "shout-out" to "Los Primos" (another Mexican gang), but the DJ declined this request. (*Id.* at 530, 540.) The prosecution offered further evidence that both Petitioner and Codefendant were members of Chicano Nation, and that this gang had a rivalry with the Sombras and Los Primos. (*Id.* at 641-46, 653, 662-63.) An expert witness for the prosecution testified that a "shout-out" made on behalf of one gang in the presence of another gang can lead to acts of violence, and had sparked prior shootings in the New York area. (*Id.* at 646.)

The jury convicted Petitioner of Murder in the Second Degree (N.Y. Penal Law § 125.25[1]), Attempted Murder in the Second Degree (N.Y. Penal Law §§ 110/125.25[1]), Assault in the Second Degree (N.Y. Penal Law § 120.05[2]), Reckless Endangerment in the First

---

[2] The record is unclear as to whether any bullets were retrieved from the surviving victims. (Tr. 59-61, 65.)

3

Degree (N.Y. Penal Law § 120.25), and Criminal Mischief in the Fourth Degree (N.Y. Penal Law § 145.00[1]). The trial court sentenced Petitioner to consecutive prison terms for the murder of Olivia Garcia (23.5 years to life), the attempted murder of Javier Garcia (20 years), and the assault of Sergio Hernandes (7 years). (Twersky Affirm. at 3.) The trial court also sentenced Petitioner to two and one-third to seven years of imprisonment on the reckless endangerment charge and one year of imprisonment on the criminal mischief charge, both running concurrently with each other and the other sentences. (*Id*.)

Petitioner appealed his conviction and sentence, arguing that: (1) the trial court violated Petitioner's due process rights by permitting a gang expert to testify; (2) the prosecution's closing arguments deprived Petitioner of a fair trial; and (3) the trial court erred in imposing consecutive sentences. (*See* Brief for Petitioner, attached as Ex. 3 to the Twersky Affirm.) The Appellate Division, Second Department ("Appellate Division") affirmed his conviction and sentence. *See People v. Cruz*, 46 A.D.3d 567 (2d Dep't 2007). With respect to admission of the testimony from the gang expert, the Appellate Division held that the trial court "providently exercised its discretion in admitting it" because "the probative value of the expert testimony regarding the customs and practices of Mexican-American gangs, which was relevant to the defendant's motive and provided a necessary background, outweighed any prejudice to the defendant." *Id*. at 567-68. The Appellate Division held that Petitioner's remaining claims were "unpreserved for appellate review" and in any event, were "without merit." *Id*. at 568. Subsequently, the New York Court of Appeals denied leave to appeal. *See People v. Cruz*, 10 N.Y.3d 763 (2008).

Petitioner then moved, *pro se*, to vacate his conviction, pursuant to N.Y. Criminal Procedure Law § 440.10 ("440 Motion"). (*See* 440 Motion, attached as Ex. 4 to the Twersky

4

Affirm.) Petitioner contended, *inter alia*, that: (1) the indictment was jurisdictionally defective because his name was not specifically repeated in the body of the indictment, and that other details were improperly omitted from it; (2) the prosecution's witnesses lacked personal knowledge of Petitioner's involvement in the shootings; and (3) the felony complaint was defective. The trial court denied Petitioner's motion. *See People v. Cruz*, Indict. No. 8978/2003, N.Y. Supreme Court Kings County Criminal Term, Decision & Order dated Jan. 29, 2010. The trial court concluded that "all of [Petitioner's] claims are procedurally barred from collateral review" because he "had a full opportunity to raise these claims on appeal, and his failure to do so is unjustified." *Id*. Additionally, the trial court noted that Petitioner's claims were "utterly without merit." *Id*. The Appellate Division affirmed the trial court's denial. (Twersky Affirm. at 6.)

Petitioner sought a stay of this proceeding, and then moved, *pro se*, in state court seeking a writ of error *coram nobis* on the grounds that appellate counsel was ineffective for failing to challenge two errors on appeal: (1) the trial court's error in denying Petitioner's motion for a mistrial because the prosecution failed to serve notice of a witness's prior identification of Petitioner from a newspaper photograph; and (2) the trial court's error in denying dismissal of the defective charging instrument. (*Id*. at 7.) The Appellate Division denied Petitioner's application, concluding that Petitioner "failed to establish that he was denied the effective assistance of appellate counsel." *See People v. Cruz*, 92 A.D.3d 891 (2d Dep't 2012). The New York Court of Appeals denied leave to appeal. *See People v. Cruz*, 19 N.Y.3d 959 (2012.) Petitioner then moved to amend the Petition in this action to assert a claim of ineffective assistance of counsel, contending that appellate counsel was ineffective for omitting from the

5

appeal the argument that the trial court erred in denying his motion for a mistrial for the prosecution's failure to serve notice of a prior witness's identification. (*See generally*, Am. Pet.)

## LEGAL STANDARDS

**I.   Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which governs the review of petitions challenging state convictions entered after 1996, federal courts may grant habeas relief only if the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An "unreasonable application" is one in which "the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application must have been "objectively unreasonable." *Id.* at 409. Finally, "a determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

*Pro se* pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (citation omitted). Courts should "interpret [such papers] to raise the strongest arguments that they suggest." *Forsyth v. Fed'n Emp't & Guidance Serv.*, 409 F. 3d 565, 569 (2d Cir. 2005) (citation and quotation marks omitted). Though a court need not act as an advocate for *pro se* litigants, in such cases "there is a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done." *Davis v. Kelly*, 160 F. 3d 917, 922 (2d Cir. 1998) (citation omitted).

## II. Procedural Default

District courts cannot review a state prisoner's federal claims, if they are barred from federal review by an independent and adequate state ground, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). When a state court concludes that a claim is unpreserved for appellate review, this is "an independent and adequate state ground that bars a federal court from granting habeas relief." *Butler v. Cunningham*, 313 F. App'x 400, 401 (2d Cir. 2009) (citing *Coleman*, 501 U.S. at 750); *see also Reid v. Senkowski*, 961 F. 2d 374, 377 (2d Cir. 1992). Therefore, if a state court's holding contains a statement that a claim is procedurally barred based on a state rule, the federal court may not review it even if the state court also rejected the claim on the merits "in any event." *Fama v. Comm. of Corr. Servs.*, 235 F. 3d 804, 810 n.4 (2d Cir. 2000); *see also Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989).

If a claim has been procedurally defaulted in state court, a federal court may address its merits only if the petitioner demonstrates cause for the default and prejudice to the petitioner or that a fundamental miscarriage of justice will occur if the court does not review the claim. *See Murray v. Carrier*, 477 U.S. 478, 485, 492 (1986); *Wainright v. Sykes*, 433 U.S. 72, 87 (1977); *Bossett v. Walker*, 41 F. 3d 825, 829 (2d Cir. 1994). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Clark v. Perez*, 510 F. 3d 382, 393 (2d Cir. 2008). To establish prejudice, the petitioner must show that the alleged violation "worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

### III. Exhaustion

Under 28 U.S.C. § 2254(b) and (c) a petitioner must exhaust his or her state court remedies before a federal court may grant habeas relief to a petitioner in state custody. *Galdamez v. Keane*, 394 F. 3d 68, 72 (2d Cir. 2005). The exhaustion of state remedies requirement means that a petitioner must present his or her claim to the highest court of the state. *Harris v. Fischer*, 438 F. App'x 11, 13 (2d Cir. 2011) (citing *Galdamez*, 394 F. 3d at 73). A claim is properly exhausted when the state court has been "fairly apprised" of the factual and legal premises of the constitutional claim. *Id.* (citing *Grey v. Hoke*, 933 F. 2d 117, 119 (2d Cir. 1991)).

# DISCUSSION

I.   **Admission of Expert Witness Testimony Relating to Gangs**

Petitioner contends that the trial court erred in permitting an expert on gang activity to testify as the prosecution did not provide any evidence of Petitioner's involvement in gangs. (Pet. at 7-10; Petitioner's Memorandum of Law in Support of Reply ("Pet'r's Reply Mem."); Dkt. Entry No. 41 1-13 .) He notes that he and Codefendant "firmly denied being in a gang" and that none of the witnesses testified that either one of them belonged to a gang. (Pet. at 8.) At trial, the prosecution presented an expert on gang behavior, who testified that Petitioner and Codefendant's tattoos indicated their involvement in gangs. (Tr. 639-46, 649, 658-62.) Petitioner asserts that his tattoos are not gang-related. According to Petitioner, at trial, Petitioner's sister testified that the tattoos consist of: "(i) a tear drop, which symbolizes the death of his deceased nephew: 'Plutarco' Hernandez; and (ii) C.C.S. which simply means the abbreviation for the full name (true name) of <u>C</u>arlos <u>C</u>ruz <u>S</u>anchez; and (iii) Plutarco, sprawed [sic] in large print 'old-style English lettering' on his back, symbolizes a mural of his deceased nephew who died during a hernia operation at the age of sixteen in Puebla, Mexico." (Pet. at 9 (emphasis in original).)

The Court construes the Petition as asserting that the trial court violated Petitioner's Fourteenth Amendment rights to due process by improperly admitting expert witness testimony regarding gang violence for the purpose of showing his motive. (*See* Pet'r's Reply Mem. at 3-13.) However, it is well-established that state evidentiary rulings generally do not merit federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Marshall v. Lonberger*, 459 U.S. 422, 438 (1983); *Aponte v. Scully*, 740 F. Supp. 153, 158 (E.D.N.Y. 1990). Petitioner has provided no authority to the contrary. Moreover, even if the trial court's evidentiary decision

was objectively unreasonable, in order to merit habeas relief for denial of due process, Petitioner would have to show that the error "denied him a fundamentally fair trial." *Collins v. Scully*, 755 F. 2d 16, 18 (2d Cir. 1985); *see also id.* at 18-19 (requiring a petitioner to show that "the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it."). If other evidence, properly admitted at trial, is sufficient to support the conviction, habeas relief is not merited. *See Johnson v. Ross*, 955 F. 2d 178, 181 (2d Cir. 1992).

Here, setting aside the expert testimony at issue, the other properly admitted evidence was more than sufficient to support the conviction. Multiple eyewitnesses, including one of the victims, identified Petitioner and Codefendant as the shooters. Furthermore, police pursued both men as they fled the scene of the shooting, apprehended them nearby almost immediately, and found the murder weapons along the route by which they had fled. Thus, the Court cannot conclude that the expert testimony, regardless of whether it was properly admitted, was "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Scully*, 755 F. 2d at 18 (citation omitted).

As the foregoing analysis indicates, the state court's resolution of this claim did not contravene or unreasonably apply settled Supreme Court law. Accordingly, Petitioner's due process claim challenging the admission of the testimony of the gang expert is dismissed with prejudice.

## II. Imposition of Consecutive Sentences

Petitioner contends that the trial court erred in imposing consecutive sentences, as consecutive sentences are "unlawful and excessive." (Pet. at 11-12.) However, federal habeas

review is limited to questions of constitutional and federal law, and "there is no constitutionally cognizable right to concurrent, rather than consecutive, sentences." *United States v. McLean*, 287 F. 3d 127, 136-37 (2d Cir. 2002) (quotation marks omitted); *see also Charles v. Fischer*, 516 F. Supp. 2d 210, 223-24 (E.D.N.Y. 2007) (holding that the imposition of consecutive sentences under state law is not a ground for habeas relief); *Figueroa v. Grenier*, 2005 WL 249001, at *15 (S.D.N.Y. Feb. 3, 2005) (same); *Davis v. Herbert*, 2003 WL 23185747, at *15 (E.D.N.Y. Oct. 24, 2003) (same). Construing his papers to raise the strongest arguments they suggest, Petitioner invokes the Fifth Amendment's Double Jeopardy Clause and the Eighth Amendment's prohibition of cruel and unusual punishment in an effort to create a constitutional question cognizable on habeas review. Both efforts fail, as set forth below.

A. **Petitioner's Double Jeopardy Clause Claim Lacks Merit**

"With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *see also Brown v. Ohio*, 432 U.S. 161, 165 (1977). The question thus becomes whether the sentencing court exceeded its authority to impose consecutive sentences under New York law.

In New York, consecutive sentences are valid if each sentence results from a "separate and distinct" act. *People v. Laureano*, 87 N.Y.2d 640, 643 (1996) (discussing N.Y. PENAL LAW § 70.25[2]); *see also People v. Underwood*, 52 N.Y.2d 882, 883 (1981) (finding consecutive sentences invalid when state failed to demonstrate separate or distinct acts). Even if the offenses were committed as "part of a single transaction," and "even if the statutory elements of [the] multiple offenses overlap," consecutive sentences remain valid so long as the offenses were "committed through separate and distinct acts." *People v. Ramirez*, 89 N.Y.2d 444, 451 (1996).

11

When defendants fire multiple gunshots and wound multiple victims, each shot constitutes a "separate act," meaning that consecutive sentences are valid so long as different bullets wounded each victim. *See People v. Brathwaite*, 63 N.Y.2d 839, 843 (1984). In such cases, the firing of multiple shots alone is sufficient to support a conclusion that each victim was hit by a separate bullet, unless the evidence shows otherwise. *See People v. Rivera*, 262 A.D.2d 31 (1st Dep't 1999) (consecutive sentences valid when defendant fired five to six shots, injuring two victims); *People v. Black*, 249 A.D.2d 318, 319 (2d Dep't 1998) (consecutive sentences valid when defendant fired numerous shots, injuring eight victims); *see also People v. Jones*, 41 A.D.3d 507, 508-09 (2d Dep't 2007) (consecutive sentences improper where one victim was shot five times and another was shot twice, but defendant only fired five shots).

In the present case, detectives recovered six shell casings from the scene of the crime, indicating that Petitioner and Codefendant fired at least six shots between them. (*See* Tr. 237-38, 241-46, 257-60.) Because each gunshot constituted a "separate act," Petitioner's consecutive sentences were valid so long as different bullets wounded each of the three victims. *See Brathwaite*, 63 N.Y.2d at 843. According to testimony credited by the jury, Javier and Olivia Garcia were each hit twice and Hernandes was struck once. (*See* Tr. 449-51, 454, 461-62, 477.) Two different weapons were used in the shootings, a 9mm and a .380 caliber semi-automatic handgun, and two .380 bullets were removed from Olivia Garcia's body during the autopsy. (*See* Tr. 165-66, 175-77, 210, 500-01, 609-14.) As previously mentioned, absent evidence to the contrary, the firing of multiple shots combined with the victims' multiple gunshot wounds is sufficient to demonstrate that the victims were hit by separate bullets. *See Rivera*, 262 A.D.2d at 31; *Black*, 249 A.D.2d at 319. Petitioner offers no evidence to the contrary, and nothing in the record demonstrates, for example, that any of the bullets that entered and exited Javier Garcia's

body went on to strike Olivia Garcia or Hernandes. Accordingly, under these facts and circumstances, the wounding of two victims and the killing of a third by multiple gunshots constituted three separate and distinct acts under New York law. As such, Petitioner's consecutive sentences did not violate either state law or the Double Jeopardy Clause. Accordingly, habeas relief is unwarranted on this ground.

### B. Petitioner's Consecutive Sentences Do Not Violate the Eighth Amendment

As a general matter, "the Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime." *Rummel v. Estelle*, 445 U.S. 263, 271 (1980). However, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Id.* at 272. On habeas review, "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." *White v. Keane*, 969 F. 2d 1381, 1383 (2d Cir. 1992). As explained above, Petitioner's sentence is valid under state law. Accordingly, his sentence is not a cause for habeas relief on Eighth Amendment grounds.

## III. Personal Knowledge of Witnesses

Petitioner claims that none of the prosecution's witnesses were able to identify him as one of the shooters. (Pet. 14-17.) Petitioner first raised this claim in his 440 Motion, which the state court rejected as "utterly without merit." *See People v. Cruz*, Indict. No. 8978/2003, N.Y. Supreme Court Kings County Criminal Term, Decision & Order dated Jan. 29, 2010. Notably, the state court also concluded that this claim was "procedurally barred from collateral review" because Petitioner "had a full opportunity to raise these claims on appeal, and his failure to do so

is unjustified."[3]  *Id*. (citing N.Y. Crim. Pro. L. § 440.10(2)(c)).  The Appellate Division, Second Department affirmed.  (Twersky Aff. at 6.)

The Court must dismiss this claim.  First, this claim is procedurally barred from federal habeas review as it was rejected by the state court on an independent and adequate state law ground.  *See Williams v. Goord*, 277 F. Supp. 2d 309, 318-19 (E.D.N.Y. 2003) ("The Second Circuit and this Court have previously held that the denial of a § 440.10 motion for failure to raise a claim on direct appeal represents the application of a 'firmly established and regularly followed' New York rule." (quoting *Arce v. Smith,* 889 F. 2d 1271, 1273 (2d Cir. 1989))).  Second, Petitioner cannot show any prejudice from this ruling as there is no merit to his claim.  Petitioner's contention that the witnesses lacked personal knowledge of his involvement is contradicted by the evidence adduced at trial.  For example, Javier Garcia identified Petitioner at trial and testified that he saw Petitioner holding a firearm.  (Tr. 531-32, 542-43.)  Michael Eddi, a second witness, identified Petitioner as one of the individuals who fired shots towards the victims.  (Tr. 59-61.)

As the foregoing analysis indicates, the state court's resolution of this claim did not contravene or unreasonably apply settled Supreme Court law.  Accordingly, Petitioner's claim regarding the "personal knowledge" of the prosecution's witnesses is dismissed with prejudice.

## IV. Defective Charging Instrument

Petitioner asserts that the indictment against him was defective because it named him in the caption but referred to him as "defendant" in the body of the indictment and that it was

---

[3]  Under N.Y. Criminal Procedure Law § 440.10(2)(c), a claim is procedurally barred from appellate review if the facts underlying the claim were in the record at the time of a defendant's appeal and the defendant omitted that claim from his or her appeal.  *See* N.Y. Crim. Pro. L. § 440.10(2)(c) ("Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him . . . .").

14

prepared by an "unknown person." (Pet. at 18-21.) Petitioner first raised this claim in his 440 Motion, which the state court rejected as "utterly without merit." *See People v. Cruz*, Indict. No. 8978/2003, N.Y. Supreme Court Kings County Criminal Term, Decision & Order dated Jan. 29, 2010. The state court also found this claim "procedurally barred" for the same reason as his claim regarding the witnesses' knowledge—Petitioner's failure to raise the claim on direct appeal, in violation of N.Y. Crim. Pro. L. § 440.10(2)(c). *Id*. The Appellate Division affirmed. (Twersky Aff. at 6.)

The Court must dismiss this claim. First, this claim is procedurally barred for the same reasons as his claim regarding the witnesses' knowledge. Second, Petitioner cannot show any prejudice from this ruling as there is no merit to his claim. *See Bermudez v. Conway*, 2012 WL 3779211, *12 (E.D.N.Y. Aug. 30, 2012) (explaining in dicta, that a petitioner's challenge to the sufficiency of an indictment on the ground that he was named in the caption, but referred to in the body of the indictment as "defendant" lacked merit). As the foregoing analysis indicates, the state court's resolution of this claim did not contravene or unreasonably apply settled Supreme Court law. Accordingly, Petitioner's defective indictment claim is dismissed with prejudice.

## V. Ineffective Assistance of Counsel

Petitioner contends that he was denied the effective assistance of counsel, in violation of the Sixth Amendment. Specifically, Petitioner asserts that appellate counsel failed to raise "meritorious issues that appeared on the face of the record, and should have been raised on direct appeal, and . . . would have resulted in a reversal of the judgment." (Petitioner's Memorandum of Law in Support of Am. Pet., Dkt. Entry No. 26 at 1.) Petitioner contends that appellate counsel should have argued for reversal because the trial court erred by denying his motion for a mistrial for the prosecution's failure to serve notice of a prior witness identification of defendant

15

from a newspaper photograph. (*Id.* at 2-6.) Petitioner first raised this issue in his *pro se* motion in state court seeking a writ of error *coram nobis*. The Appellate Division denied Petitioner's application, concluding that Petitioner "failed to establish that he was denied the effective assistance of appellate counsel." *People v. Cruz*, 92 A.D.3d 891 (2d Dep't 2012). The New York Court of Appeals denied leave to appeal. *See People v. Cruz*, 19 N.Y.3d 959 (2012.)

Under the Sixth Amendment, criminal defendants "shall enjoy the right . . . to have the Assistance of Counsel for [their] defense." U.S. Const. amend. VI. "[T]he right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness" measured by "prevailing professional norms," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A "reasonable probability" of a different result is a "probability sufficient to undermine confidence in the outcome." *Id.*

"The burden of establishing both constitutionally deficient performance and prejudice is on the defendant." *U.S. v. Birkin*, 366 F. 3d 95, 100 (2d Cir. 2004) (citing *Strickland*, 466 U.S. at 687). Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Generally, "strategic choices made by counsel after a thorough investigation of the facts and law are 'virtually unchallengeable,' though strategic choices 'made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Thomas v. Kuhlman*, 255 F. Supp. 2d 99, 107 (E.D.N.Y. 2003) (quoting *Strickland*, 466 U.S. at 690-91).

16

With respect to claims asserting ineffective assistance of appellate counsel, the Court is mindful that skilled and talented appellate advocates tend to "winnow[] out weaker arguments on appeal and focus[] on one central issue if possible." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). "Appellate counsel is not ineffective simply because she fails to brief or argue every possible issue." *Harris v. Phillips*, 2013 WL 1290790, at *11 (E.D.N.Y. Mar. 28, 2013). To rise to the level of ineffective assistance, "the omission of an issue in the appeal must involve the omission of a 'significant and obvious' issue, in order to brief and argue issues that were 'clearly and significantly weaker.'" *Id.* (quoting *Busiello v. McGinnis*, 235 F. Supp. 2d 179, 192 (E.D.N.Y. 2002)).

Turning to the instant action, Petitioner's appellate counsel was not ineffective for omitting an argument challenging the trial court's denial of Petitioner's motion for a mistrial. On appeal, Petitioner's counsel argued for reversal of the conviction and sentence on the grounds that: (1) the trial court violated Petitioner's due process rights by permitting a gang expert to testify; (2) the prosecution's closing arguments deprived Petitioner of a fair trial; and (3) the trial court erred in imposing consecutive sentences. (*See* Brief for Petitioner, attached as Ex. 3 to the Twersky Affirm.) Appellate counsel declined to argue that the trial court erred in denying Petitioner's motion for a retrial because, on review, appellate counsel "determined that the court's ruling in this regard was correct and that the law would not support an argument to the contrary." (October 21, 2011 Declaration of Joshua M. Levine ("Levine Decl."), attached to Twersky Aff. at 5.) Appellate counsel's decision to omit this argument was correct. Garcia's family provided him with a newspaper containing a photograph of Petitioner exiting jail shortly after his arrest. (Tr. 545-52, 566-67.) Thus, it was Garcia's family, and not the police, that provided him with the newspaper. Under these circumstances, the prosecution was not required

to provide a defendant with notice of its intent to call the witness, as the police had no involvement with the witness's viewing of the photograph. *See People v. Berkowitz*, 50 N.Y.2d 333, 338 n.1 (1980) (citing *People v. Gissendanner*, 48 N.Y.2d 543, 551-52 (1979) (explaining that the prosecution must provide a defendant with notice of its intent to call a witness whose "in-court identifications" will be "predicated on earlier *police-arranged* confrontations between a defendant and an eyewitness . . . for the purpose of establishing the identity of the criminal actor" (emphasis added))). Thus, there was nothing deficient about appellate counsel's performance. *See Harris*, 2013 WL 1290790, at *11-13 (rejecting petitioner's ineffective assistance of appellate counsel as "[a]ppellate counsel made several different arguments on direct appeal, and was not ineffective for failing to include the severance argument, given that it was highly unlikely to succeed"). Accordingly, because Petitioner has failed to establish the first prong of the *Strickland* test, the state court's rejection of this claim did not contravene or unreasonably apply settled Supreme Court law. Petitioner's Sixth Amendment claim is dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, the Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied in its entirety. Petitioner is further denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* FED. R. APP. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

DATED:   Brooklyn, New York
         September 30, 2013

/s/
DORA L. IRIZARRY
United States District Judge